THE STATE v. RICHARD GIERSCH.

*Prohibition—" Spirituous Liquors"—Local Option—Statute— Wine and Beer.*

The words " spirituous liquors," as employed in §§3113 and 3116 of *The Code*—the Local Option Act—embrace wines (except those designated in §3110) and lager beer, and all other liquors, whether produced by fermentation or distillation, which by their free use produce intoxication.

(*State* v. *Packer*, 80 N. C., 439; *State* v. *Lowry*, 74 N. C., 121; *Attorney General* v. *Bank*, 5 Ired. Eq., 71; *State* v. *Nash*, 97 N. C., 514, and *Hines* v. *Railroad*, 95 N. C., 434, cited).

CRIMINAL ACTION, tried before *Merrimon, Judge,* at July Term, 1887, of WAKE Superior Court.

The facts are fully stated in the opinion.

*The Attorney General,* for the State, cited *State* v. *Lowrey,* 74 N. C., 121; *State* v. *Lockyear,* 95 N. C., 633; *State* v. *Packer,* 80 N. C., 439; *State* v. *Oliver,* 26 W. Va., 422; *State* v. *Shearer,* 2 Col. (Tenn.), 323; *Tompkins* v. *Taylor,* 21 N. Y., 173; Dwarris on Stat., 194; *The Code,* §§983, 1076, 2087, 3440, 3671, 3110; Laws 1887, Ch. 135.

*Messrs. C. M. Busbee, John Devereux, Jr., E. C. Smith* and *Armistead Jones,* for the defendant.

The question presented is, do the words " spirituous liquors," as used in §§3113 and 3116 of *The Code*—Local Option Act—embrace wines and malt liquors? That they do not has been declared by the most eminent text writers and a long and uniform line of decisions by the highest and ablest Courts in the Union. Bishop on Crim. Law, Vol. II, §1145; Wharton on American Crim. Law, §..... ; Webster's and Worcester's Dictionaries—" Spirits;" *State* v.

*Thompson,* 20 West Va., 674; *State* v. *Adams,* 51 New Hampshire, 568; *Walker* v. *Prescott,* 44 New Hampshire, 511; *Smith* v. *The State,* 19 Conn., 493; *Commonwealth* v. *Herrick,* 6 Cushing, 465, 468; *Commonwealth* v. *Gray,* 2 Gray, 501; *State* v. *Lump,* 16 Mo.,        ; *Fritz* v. *The State,* 1 Bax. (Tenn.),        ; *Caswell & Hill* v. *The State,* 2 Hump. (Tenn.), 402; *State* v. *Moore,* 5 Blackford (Ind.), 118; *State* v. *Brittain,* 89 N. C., 574; *State* v. *Packer,* 80 N. C., 289; *Rizer* v. *Randleman,* 5 Jones, 428.

This distinction between spirituous and vinous and malt liquors is clearly drawn in all the revenue acts in North Carolina. *The Code,* Vol. II, §3701, and Ch. 175, §34, Acts 1885.

In the recent case of *State* v. *Nash,* decided at the last term, the Court follows the overwhelming weight of authority above cited, and intimates as plainly as possible that vinous and malt liquors are not included in the prohibition of the sale of spirituous liquors. The only case to be found in the books which seems to put a different construction on the term spirituous liquors is *State* v. *Lowry,* 74 N. C., 121. It is submitted, however, that this case will no longer be followed. In the first place, it stands alone, there being no other case, either in England or America, that supports it, while it is directly opposed to the great weight of authority above cited; secondly, as an authority it is very much shaken by the intimation in *State* v. *Nash, supra;* for the Court would never have made an intimation directly opposed to the decision of that case if they intended to follow it; and, thirdly, it is submitted that the case is not sound on principle. In the first place, it construes a criminal law most strongly against the accused. The Legislature has, by plain and unambiguous language, made the sale of one commodity criminal—the the Court, by construction, makes the sale of another article criminal. In the second place, it leaves to the jury the duty of construing the meaning of the act, when this duty should be performed by the Court; and thirdly, we submit that the

rule laid down by that case is on its face impracticable. The Court say that the test of whether liquor is spirituous, and so prohibited, is whether the liquor will cause intoxication. At the same time the Court admits that cider will intoxicate, but that it is not included in the act, so that in charging the jury under this case, a Judge would have to say to the jury: "I charge you that the test of whether a liquor is or is not spirituous, is whether it will intoxicate; but I further charge you, that although you believe that cider will intoxicate, yet if you find that the defendant has only sold cider, you must acquit." *Reductio ad absurdum.*

MERRIMON, J. It appears that the sale of *spirituous liquors* was prohibited within Raleigh township within the county of Wake, as provided and allowed by the statute (*The Code*, §§3110–3116); that while the sale of such liquor was so prohibited, the defendant sold for a price, to a certain person, within that township one glass of lager beer, and also one glass of wine, both being intoxicating liquors and containing alcohol produced by fermentation, not by distillation, and neither containing any foreign admixture of spirituous liquors; that at the time of such sale the defendant had a license granted to him by the Sheriff of the county named, in pursuance of an order made by the County Commissioners of the same county, while the sale of *spirituous liquors* was so prohibited, purporting to allow him to sell *vinous and malt* liquors within the township named, at the place where the sales mentioned were made.

The defendant was indicted for so selling the lager beer and wine mentioned, and pleaded not guilty. On the trial the jury rendered a special verdict, the material facts of which are above set forth. The Court being of opinion that the sale of lager beer and wine was not a violation of the statute so prohibiting the sale of *spirituous liquors* within the township mentioned, directed a verdict of not guilty to be

entered, which was done, and thereupon judgment was entered for the defendant, from which the Solicitor for the State appealed to this Court.

The statute (*The Code*, §§3110–3116), as applied in this case, prohibits the sale of *spirituous liquors*—any spirituous liquors—within Raleigh township in the county of Wake, and the question presented for our decision by the assignment of error in the record is, what is meant by the words *spirituous liquors*—any spirituous liquors as used and applied in the statute to be interpreted, and particularly, does the inhibition extend to the sale of wine and lager beer.

It is contended by the counsel for the defendant that these words extend to and embrace only distilled spirits; on the other hand the Attorney General insists for the State, that they are used in a comprehensive and remedial sense, and embrace all kinds of intoxicating liquors, including wine and lager beer, except in so far as domestic wine is expressly excepted.

The term "liquor," in its most comprehensive significication, implies fluid substances generally—such as water, milk, blood, sap, juice, but in a more limited sense and its common application, it implies spirituous fluids, whether fermented or distilled—such as brandy, whisky, rum, gin, beer and wine, and also decoctions, solutions, tinctures, and the like fluids in great variety.

The term "spirit" or "spirits" has a general meaning, as applied to fluids, mostly of a lighter character than ordinary water, obtained but not produced by distillation; but as applied particularly to liquors, they signify the essence, the extract, the purest solution, the highly rectified spirit, the pure alcohol contained in them. The spirit of liquors is really the alcohol in them; it is this characteristic, this essential element, that makes them spirituous—that gives to all liquors of whatever kind their intoxicating quality and effect.

Alcohol, this essential element in all spirituous liquors, is

a limpid, colorless liquid.  To the taste it is hot and pungent, and it has a slight and not disagreeable scent.  It has but one source—the fermentation of sugar and saccharine matter.  It comes through fermentation of substances that contain sugar proper, or that contain starch, which may be turned into sugar.  All substances that contain either sugar or starch, or both, will produce it by fermentation.  It is a mistake to suppose, as many persons do, that it is really produced by distillation.  It is produced only by fermentation, and the process of distillation simply serves to separate the spirit—the alcohol from the mixture, whatever it may be, in which it exists.

That what we have thus said is in substance true and correct, everyone knows who is familiar with the terms defined, the nature of alcohol, the method of its production, and who has accurate knowledge of the essential elements and qualities of spirituous liquors.  "Spirituous" means containing, partaking of spirit, having the refined, strong, ardent quality of alcohol in greater .or less degree.  Hence, *spirituous liquors* imply such liquors as above defined, as contain alcohol, and thus have spirit, no matter by what particular name denominated, or in what liquid form or combination they may apppear.  Hence also, distilled liquors, fermented liquors and vinous liquors are all, alike, spirituous liquors.  These liquors respectively may have different degrees of spirit in point of fineness and strength.  Distilled liquors may be stronger or weaker according to the quantity and quality of the alcohol in them, and so of the other kinds mentioned.

We know, from  common observation and knowledge, and it is a generally admitted physical fact, not denied in this case, that lager beer and wine contain alcohol, and generally in such quantity and degree as to produce intoxication.  These liquors are, therefore, spirituous, and obviously come within the meaning and are embraced by the words " spirit-

uous liquors" as used in the statute, unless there is something in the latter that shows that these words were intended to have a more limited application, and to exclude such beer and wine.

The closest reasonable scrutiny of the statute, its terms, phraseology, connections and purposes, shows no such narrow application of the words "spirituous liquors" employed in it as to exclude such beer and wine. But, we think, the contrary plainly appears. The terms used are, severally and taken together, broad and sweeping, not exceptive or limiting, but in a single respect presently to be mentioned; and the manifest purpose is to prevent and suppress drunkenness and the attendant evils produced by the free use of intoxicating spirituous liquors. The terms are not "any distilled spirituous liquors," not "any fermented spirituous liquors," but they are "spirituous liquors" and "*any* spirituous liquors." How sweeping!

The purpose being obvious, the language of the statute, its parts and its whole, must receive such reasonable interpretation as will effectuate the purpose. This is the rule of interpretation, of constant application to all statutes, whatever their nature or purpose. *Hines* v. *Railroad,* 95 N. C., 434. Here, there is no need of strained interpretation of terms or phraseology or purpose. These are plain, easily seen and understood.

As we have seen, "spirituous liquors" embrace lager beer and wine, by reason of their nature and the effects produced by the use of them. If the purpose of the statute is to prevent drunkenness by prohibiting the sale of spirituous liquors, is it not plain to the mind of the simplest observer that such purpose would only be partially served by preventing the sale of only distilled liquors? Fermented and vinous liquors, lager beer and wine, are spirituous liquors, and produce intoxication and drunkenness as certainly as distilled liquors produce the like effect. It simply requires

the greater quantity of them to do so. Can it be said, with any show of reason, that the Legislature would have intended to cripple, prevent and hinder its purpose by prohibiting the sale of one kind of intoxicating spirituous liquors and not another? Can any just and fair mind reach the absurd conclusion that it intended to prevent drunkenness by prohibiting the sale of distilled spirituous liquors, and to allow and, in practical effect, encourage drunkenness by the toleration of the sale of fermented and vinous spirituous liquors; and if, for any reason, it had such mixed, contradictory purpose, would it not have said so—so provided as to leave no doubt as to such partial purpose? The presumption is, it intended to further and accomplish, not hinder and defeat, its plain purpose. And this is made the more manifest by an exceptive provision in respect to domestic wines, manufactured in this State from certain fruits mentioned. It is expressly provided in §3110 of the section cited above, that such domestic wines may be sold "in bottles corked or sealed up, and not to be drunk on the premises," &c. But it is further provided that no person shall "sell any of said wines to any person who is a minor," and, moreover, this exception does not extend "to wines which contain any foreign admixture of spirituous liquors, and shall only apply to such wines as derive their ardent spirit from vinous fermentation."

This exceptive provision is very significant in various aspects of it. It points, by necessary implication, to the purpose of the statute to prevent drunkenness, in that, such wine—domestic wine—that has *no foreign admixture of spirituous liquors*—shall not be sold to a minor at all. It shall not be drunk on the premises where it is sold. And to prevent this, it must be corked or sealed in bottles. Now, why these cautionary regulations, if not intended to prevent excessive drinking, drunkenness, arising from the use of *any spirituous liquors*, even domestic wine? If it was intended that fer-

mented spirituous liquors, generally, might be sold, why were they not excepted? Why were not lager beer and light wines generally excepted? Why except only domestic wines, the sale of which is so cautiously guarded?

Further, if the terms "spirituous liquors," as used in the statute, embrace only distilled liquors, then this cautious exceptive provision is wholly meaningless and nugatory; in that case, it serves no purpose at all, because, without it, all fermented liquors might be sold. Can any intelligent mind believe the Legislature intended this provision should be thus meaningless? Surely not. And treating it as serving the intelligent purpose plainly specified, does it not show, beyond serious question, that the terms spirituous liquors, so used in the statute, were not intended to embrace only distilled liquors? It cannot be said that this exception of the statute in question is by mistake, as suggested. It was enacted at the session of the General Assembly of 1874–'75, and it has been of the statute in its present connection since 1883, and the Legislature has not repealed or modified it, although it has repeatedly amended the statute in other respects.

We may advert, in this connection, to the general fact, of common knowledge, that the Legislature, the legal profession and the people generally who took note of the subject, understood that the inhibition of the statute in question extended to fermented as well as distilled liquors. The contrary has not been insisted upon, so far as we know, by any one, until the decision of this Court in *State* v. *Nash*, 97 N. C., 514, in which the Chief Justice simply suggested a doubt in respect to the extent of the inhibition, in a connection not at all material. He expressly declared that any question in that respect was not decided. What he said was scarcely said *obiter*. It was not, nor was it intended to be authority, and so every intelligent lawyer must have understood. *Attorney General* v. *Bank*, 5 Ired. Eq., 71, and cases there cited.

What we have said finds strong support in the decision of this Court in *State* v. *Lowry,* 74 N. C., 121, in which it was expressly held, in construing the statute (*The Code,* §1076,) forbidding the sale of "spirituous liquors" by a measure less than a quart, that the inhibition extended to and embraced fermented liquors, and upon the ground that they are spirituous liquors. It interpreted a statute, the purpose of which is to regulate the sale of spirituous liquors and raise revenue. The purpose of the statute before us is to *prohibit* such sales, and it, therefore, has the greater weight and point. The learned counsel for the defendant, on the argument before us, seeing the force of this case, contended that it is not satisfactory and ought to be disregarded. We cannot hesitate to think otherwise, because of the brief, cogent reasons stated in the opinion, as well as the reasons stated above. The decision is authority, not to be disregarded for light or even plausible reasons. It was made by a very able Court, and the able Judge who wrote the opinion was a learned lawyer, familiar with the legislation and statutory law of this State, and he was as well a scholar, familiar with the nature, meaning, power and compass of words, whether applied in statutes or otherwise.

It was likewise contended on the argument that the inhibition surely could not be treated as extending to all liquors that contained spirit, because very many liquors contain so small a percentage of alcohol as that it is scarcely perceptible; that the inhibition only applied to strong distilled liquors, and, therefore, not to lager beer or wine. This argument is without force. As we have seen, the purpose of the statute is to prevent and suppress drunkenness, and promote sobriety. The inhibition, therefore, extends to such spirituous liquors, whether fermented or distilled, as by their free use produce intoxication. Hence, when it is of common knowledge and observation that a particular kind of spirituous liquors in question produces intoxication, then the Court

may so declare, but if it is doubtful whether or not the liquor be such, then a question of fact is raised for the jury, as was decided in *State* v. *Lowry, supra.*   See also *State* v. *Packer*, 80 N. C., 439.

The inhibition of the statute under consideration and, we may add, like inhibiting or other statutes, unless otherwise provided in them, extend and apply to all such spirituous liquors, however denominated, whether fermented or distilled, as by the free use of them ordinarily produce intoxication.   This appears from the nature, terms and purpose of such statutes, and the causes of common knowledge that give rise to their enactment.

It may be added, that the General Assembly, at its Session of 1887, recognized the statutory provision under consideration as having the meaning we attribute to it, and acted upon it.   The statute, (Acts 1887, ch. 135, sec. 31,) among other things, provides that licences, as prescribed therein, shall be granted to sell spirituous liquors, both fermented and distilled, "except in territory where the sale of liquors is prohibited by law."   Within such territory license shall not be granted.   Why this broad restriction, if, by the law prevailing at the time of this enactment, fermented liquors might be sold within the territory where the sale of spirituous liquors was prohibited, and the Legislature so understood? This view of the statute just cited was suggested, and acted upon, by the Chief Justice *in re Giersch*, before and decided by him at Chambers in June of the present year. It is not to be supposed that the Legislature acted unadvisedly and in ignorance of the law—the presumption is to the contrary.

We do not deem it at all necessary to advert here to numerous statutory provisions, in various connections, cited on both sides of the argument as indicating the legislative intent in respect to liquors, both fermented and distilled, as to the sale or to the prohibition of the sale thereof, under

varying conditions and circumstances. In some of them it is clear that the terms "spirituous liquors" embrace only distilled liquors; in others, only fermented liquors; in others, all kinds of intoxicating liquors are embraced. They do not serve to strengthen or impair, in any material degree, the force of what we have said.

The strength of the argument for the defendant consisted mainly in the citation of numerous decisions of Courts of great respectability in other States, in which it was held that the term "spirituous liquors" did not embrace fermented liquors. In most of the cases cited it was so decided; in a few it was decided otherwise. But it must be said that all these cases applied to particular statutes, construed by the Courts deciding them respectively, and certainly do not apply to the particular statute and its peculiar *prohibitory* features that we are called upon to interpret, and as to which we have clear and satisfactory convictions. Even if these cases were more in point than they are, we would not feel at liberty or be inclined to ignore, virtually overrule, a plain decision, almost directly in point, of our own Court, in the light of which the statute before us was enacted and from time to time amended. Nor could we escape the strength of argument, in every aspect of the case, which has led us to the conclusion we have reached.

It follows, as a consequence, that the supposed license relied upon by the defendant was ineffectual and void. The County Commissioners had no authority to make an order directing the Sheriff to grant it, and the latter had no such authority.

There is, therefore, error. The judgment must be reversed, the verdict of not guilty, entered upon the special verdict, set aside, and the verdict of guilty thereupon entered, and further proceedings had in the action, according to law.

To that end let this opinion be certified to the Superior Court. It is so ordered.

Error.