GARNER *v.* DOREMUS.

1. MUNICIPAL CORPORATIONS — DETROIT CHARTER — CONTRACTS — VALIDITY — PUBLIC WORKS.

   Where, after a contract approved by the common council of Detroit had been made with certain parties to build sidewalk intersections at a stipulated price, which they failed to construct as fast as needed, the commissioner of public works, with the approval of the board, employed other firms, including relator, to construct them at the same price, issuing written orders for specific intersections, which employment was not brought to the attention of the council until after the work was done, relator's contract was not valid, under the charter (section 240), though it was not one such as are required to be let to the lowest bidder.

2. SAME — CITY CONTROLLER — WARRANTS — REFUSAL TO DRAW.

   The city controller properly refused to draw a warrant on the treasury in payment of relator's claim, notwithstanding its allowance by the council, there being no controller's certificate on the contract, as provided by section 251 of the charter, and there being no money for such purpose and no appropriation.

Certiorari to Wayne; Murphy, J. Submitted July 13, 1908. (Calendar No. 22,906.) Decided September 29, 1908.

Mandamus by William F. Garner to compel Frank E. Doremus, controller of the city of Detroit, to draw a warrant. There was an order granting the writ, and respondent brings certiorari. Reversed, and writ dismissed.

*A. B. Hall,* for relator.

*P. J. M. Hally,* for respondent.

HOOKER, J. There was raised by tax in the city of Detroit, for use during the fiscal year beginning July 1, 1906, for the purpose of "building and repairing stone intersections and repairing stone sidewalks," the sum of

$22,500. This sum was increased by $206.14 remaining in the fund from the previous year. On November 1, 1906, there was a balance in said fund of $1,966.99. During that year the relator, on an order issued by the commissioner of public works, constructed a large number of cement intersections in the city, no one of which cost $25. This work was all completed before November 1, 1906, and payments were made from time to time upon relator's account, which comprised a large number of items, and on November 1, 1906, the relator claimed a balance of $1,012.70, but the true sum due was $969.10. The claim was not presented until late in November, 1906, at which time the fund had been exhausted, and relator was informed by the commissioner that no funds would be available to pay the claim until the following fiscal year, beginning July 1, 1907. The bills were approved about November 1, 1906, however, by the department of public works. On February 19, 1907, $5,000 was credited to the fund, but was expended for other purposes. In the fall of 1907, relator presented his bill for payment. The controller of the city disapproved of the claim in a communication to the common council, but on January 7, 1908, the council, after investigation, allowed the claim at the sum of $969.10, and directed that the sum of $819.10 be then paid, and $150 withheld as security for the remedying of certain defects in the work. This action was vetoed by the mayor, but the resolution was afterwards passed over the veto. The resolution directed the city controller to draw a warrant on the proper fund. He refused to do this, and, upon application to the Wayne circuit court, a mandamus was issued to compel it. The cause is before us on certiorari obtained by respondent.

Counsel for respondent contend:

(1) That the contract between relator and the commissioner was not valid.

(2) That, if the contract was not valid when made, the action of the common council did not amount to a valid ratification, and waiver of the irregularities of its inception.

(3) That a mandamus should not issue to compel the controller to draw an order upon a fund that has been, and is at the time, exhausted.

Was the contract with the commissioner a legal one? The record indicates that a contract approved by the council had been made with other parties to build intersections at a stipulated price, and that such parties could not or did not construct them as fast as needed. Thereupon the commissioner of public works employed other firms at the same price, issuing written orders for specific intersections. It is evident that this was with the concurrence of the board, but there is nothing to indicate that it was brought to the attention of the council until some time after the work was done and the fund was exhausted. The contracts were not such as were required to be let to the lowest bidder. Being made by the commissioner and without approval by the council, they were not valid as executory contracts under the charter.

The following provisions of the charter (sections 240, 241, 247, 250, 251, 396 of the compilation of 1904) are cited as bearing upon the question before us:

"No contract shall be let or entered into for the construction of any public work, or for any work to be done or for the purchasing or furnishing of supplies for said city not herein provided for, and no such public work, performance, purchasing or supplying shall be commenced until approved by the common council, and until the contract therefor has been duly approved and confirmed by the common council, and a tax or assessment levied to defray the cost and expense of the same; and no such work, supplies and materials shall be paid for or contracted to be paid for except out of the proceeds of the tax or the assessment thus levied.

"No contract  *  *  *  for the construction of any public work whatever, or for any work to be done  *  *  * if the expense of such construction, repairs, work, printing, materials or supplies shall exceed $200, shall be let or entered into except to and with the lowest responsible bidder with adequate security.

"No warrant on the treasury shall be drawn for any claim or demand for the payment of which there is no

money in the treasury raised or received for such purpose, or after the fund constituted and raised therefor has been exhausted by warrants previously drawn thereon, or by appropriations, liabilities, debts and expenses actually made, incurred or contracted for, and to be paid out of such fund.

" The common council shall not by warrant, draft or order on the treasury, or by any form of contract, create any liability or expense, for the payment of which any particular fund is constituted as above, to a greater amount in the aggregate for one year than the amount of moneys raised for and paid into such fund for the year. All warrants, drafts, orders and contracts payable under this act, out of any particular fund, and issued or made after the moneys raised for and paid into such fund shall have been exhausted by payments therefrom, or liabilities created and to be paid out of said fund, shall be absolutely void as against the corporation.

" Before any contract, to which the corporation shall be a party, or to which any officer or board thereof shall be a party, for the construction or repair of any pavement, sewer, building or any other public work shall be valid or binding upon the city of Detroit, there shall be endorsed thereon by the controller a certificate that the money proposed to be expended under said contract is actually in the treasury or an appropriation made therefor; and it shall be unlawful for the controller to draw his warrant on account of any such contract not containing the certificate herein required.

" The commissioner of public works shall have no power to enter into any contract for and in behalf of the city of Detroit without the consent or approval of the common council; no debt or liability of any kind shall be created by or on account of said department during any one fiscal year in excess of the moneys then in the proper fund thereof, or which may have been authorized to be raised by the common council for the said year."

Performance of these contracts was commenced and finished by relator in violation of sections 240 and 396, for the contracts had not the approval of the common council; and, if it can be said that the tax had been levied to defray the expense thereof, it must be upon the theory that a gross sum was levied for the purpose of building intersections generally, and that such sum had not been ex-

hausted or covered by contracts let at the time this work was let. Moreover, section 251 had not been complied with; there being no controller's certificate that the money proposed to be expended under these contracts was actually in the treasury or an appropriation made therefor. This section contains an express prohibition of the issue of a warrant on account of "such a contract, not containing such a certificate." The controller might well hesitate to draw a warrant in the absence of such a certificate, especially where, as in this case, there was no money for such a purpose, and no appropriation for the purpose of such payment. In the face of this provision and those contained in sections 247 and 250, quoted herein, it seems manifest that a mandamus should not issue to compel the controller to draw a warrant upon any fund to pay these bills. It is not improbable that, in view of the approval of these contracts by the board of public works, and the subsequent allowance of the claim by the council, the controller may be compelled to attach his certificate and draw his warrant after the council shall have lawfully provided a proper fund to pay for this work; but we are not called upon to decide this upon this record, as it may be open to question. Unless we are to disregard the provisions quoted, we cannot sustain relator's contention that, having had his claim allowed, he is entitled to a warrant on the treasury, regardless of the emphatic requirement of the legislature above cited that the money must be provided and in the treasury before orders can be drawn to pay for work done, if, indeed, there is any validity in a contract executory or executed unless these provisions have been complied with, which last question we do not decide.

We are constrained to reverse the order granting the writ of mandamus, and an order denying the writ will be entered. No costs will be allowed.

GRANT, C. J., and BLAIR, MOORE, and MCALVAY, JJ., concurred.