## PATTERSON LAND COMPANY v. GEO. W. LYNN.

(162 N. W. 702.)

**Supreme court— jurisdiction of — in cases of appeals — final submission of cases — decisions — remittitur — judgment on in lower court — jurisdiction of supreme court lost — cannot recall remittitur — or reinstate cause — inadvertence — mistake — fraud.**

When the supreme court becomes invested with jurisdiction of a cause brought there on appeal, it retains such jurisdiction until the cause has been disposed of and the remittitur sent down to the court below; but when a final order has been entered, and the remittitur transferred to, and judgment entered thereon in, the court below, the supreme court loses jurisdiction to recall the

remittitur and reinstate the cause, unless the remittitur was sent down through inadvertence, mistake, or fraud.

Opinion filed April 28, 1917.

Defendant moves to recall the remittitur and reinstate appeal.  Motion denied.

*George W. Newton, R. N. Stevens, H. C. Lynn, Geo. W. Lynn,* and *H. A. Bronson* for motion.

*Watson & Young* and *E. T. Conmy contra.*

PER CURIAM.

The defendant has filed an application to recall the remittitur in this case.  The original opinion reported in 27 N. D. at page 391, 147 N. W. 256, was filed March 6th, 1914, and a rehearing was denied April 11th, 1914.  In his application for a recall of the remittitur the defendant assails both the findings of fact and the conclusions of law contained in the former opinion.  Among other questions urged is that this court rendered judgment upon an amended pleading without permitting a trial upon the issue formed by such amendment.  It is contended that the proper practice would have been to have directed the amendment to be allowed and remanded the case for trial upon the pleading as amended.  We have examined the original briefs and find that considerable space was devoted to a discussion of whether the trial court should have allowed an amendment of the complaint.  We have also examined the petition for rehearing, which consists of eighty-seven pages of typewritten matter.  This petition is a complete reargument of the entire cause and assails practically every portion of the opinion.  The last eight pages of the petition are devoted almost exclusively to an attack on that portion of the opinion which deals with and allows the proposed amendment to the complaint and orders judgment upon the complaint as amended.  The matter is argued at length and with great particularity, and it was claimed then, as now, that where an amendment of the pleading has been allowed, evidence formerly taken is not admissible to support substantive matter in the pleading as amended.  No claim, however, was made in the petition for rehearing that any actual prejudice had resulted or that the defend-

ant had any evidence which he desired to offer upon the issues arising under the amended pleading. It will be noted that the original opinion was handed down and a rehearing denied more than three years ago. It also appears that judgment was entered in the district court in accordance with the findings and conclusions of this court in July, 1914, and that notice of entry of judgment was served upon the defendant at that time. It further appears that proceedings have been had in the district court in accordance with the directions contained in the former opinion herein to ascertain the amounts to be paid by the Patterson Land Company to the defendant for the amounts expended and incurred by him in obtaining titles, taxes paid by him, and the cost of any improvements which he may have placed on the premises. There is no claim that defendant has questioned the binding effect of the former decision during all of this time.

If the remittitur can be recalled in this case, it is difficult to conceive of any litigation that may be deemed definitely ended or any judgment of this court which may be deemed final and conclusive. The rule, sustained by the overwhelming weight of authority, is that when the supreme court upon appeal becomes invested with jurisdiction of a cause, it retains such jurisdiction until the cause is disposed of and the remittitur sent down to the court below. And when it appears that after decision the remittitur is sent down intentionally in accordance with the court's order, properly made in the usual way, the supreme court loses all control over the cause and cannot subsequently recall the remittitur, any more than it may ask that a cause in which no appeal has been taken be forwarded to it for decision. The only instances in which the remittitur may be recalled are when it was sent down through inadvertence, mistake, or fraud; that is, under such circumstances that it was not in fact the act of the court.

This rule has been announced by this court, and is founded in good sense and sound public policy. It is also sustained by the overwhelming weight of judicial authority. See Hilemen v. Nygaard, 31 N. D. 419, 154 N. W. 529, and the extended note to this case as reported in Ann. Cas. 1917A, pp. 282 et seq.

In this case a rehearing was denied after defendant had presented in his petition for rehearing the very questions he presents now. The

remittitur was sent down intentionally as a result of the deliberate judgment of the court. The motion is denied.

BRUCE, Ch. J., did not participate.

ROBINSON, J. (dissenting). This is a motion to recall the remittitur and to reconsider the decision by this court in 27 N. D. 391, 147 N. W. 256. In this case the plaintiff sues to quiet its title to some 20-quarter sections of land. It comes into court with no title, and by some nice practice they obtained a decree awarding it the title of the adverse party. His title was trusteed away from him and given to Patterson Land Company. This was done under an amendment to the complaint, which was offered during the trial and disallowed by the trial court. Hence, the defendant was justified in refusing to offer any testimony under the amendment to the complaint, which became the turning point in the case and the point on which it was decided against him by this court. The court concluded to allow the amendment which the trial court had disallowed, and then proceeded to consider and decide the case on the testimony which the plaintiff had unjustly offered to sustain its amendment, regardless of the ruling of the trial court. Of course the defendant was not bound at his peril to make any attempt to refute such testimony. It was his right and duty to regard the decision of the trial court as the law of the case, and when this court came to reverse the trial court and to allow the amendment, it was its duty to remand the case for a new trial on the new issue presented by the amendment. That was in effect a new cause of action. It is hardly in accordance with due process of law to bring a party into court to answer one complaint or cause of action and then on the trial to offer a different complaint or cause of action, which is objected to and denied, and then, contrary to the rulings of the court, to submit *ex parte* evidence on the overruled amendment; and for the supreme court to allow such amendment and then to decide the case on the *ex parte* evidence unjustly offered. On the new matter presented and overruled by the trial court the defendant does fairly assert that he has had no hearing and no day in court, and with this, the very turning point on which the court decided against him and trusteed away his titles and awarded them to the plaintiff, that alone is grounds sufficient to recon-

sider the case and to remand it for a trial on the new issues presented by the amendment, and first allowed by this court. Defendant should not be condemned to lose his property without a hearing and a fair opportunity to refute the amendment after it was allowed by this court. Until it was allowed it was not an amendment, and all testimony offered to sustain it should have been rejected. The decision bears on its face other manifest errors:

2. It declares that prior to 1897 the 20 quarter sections of land in question had been abandoned by the owner. The answer to that is that sane men never abandon their titles, and insane men cannot abandon their titles; and if any party abandon his title, it does not thereby inure to any other party. The titles to land are transferred only in the manner provided by the *statute on transfers.*

3. In regard to proceedings taken by Emmons county under the Wood's Law to recover taxes delinquent in 1895 and prior years, it is said that all proceedings were in all things upheld by this court. That is not true. The court held only against the attacks or motions which were made against the proceedings. It never held that the proceedings were such as to transfer a good title to the lands.

4. It does appear that the lands in question were bid in by the county under the Wood Law, and without legal authority, the county attempted to transfer its title to the plaintiff for much less than the taxes due on the land.

5. And the court erred in holding that the plaintiff's title was fair on its face and was not subject to the attack by Lynn. 27 N. D. 407, 147 N. W. 256. The plaintiff had no title and no right to trustee away the title of the defendant. The deed which the county auditor made to the plaintiff is void on its face, and not fair on its face.

6. The court erred in holding that by reason of Lynn being state's attorney for Emmons county he was precluded from purchasing titles to the land that had been sold for taxes. A state's attorney is merely a state and county official, charged with certain duties, and he holds no confidential relation to either the state or the county such as the relation between attorney and client. His office does not in any way debar him from purchasing land titles the same as any other person. Emmons county had no title or interest in the land only such as it acquired by reason of the tax sale. If the same was void, it had no title at all. If

the sale was valid, its title could not be in any manner devested or affected by a transfer of the patent title to the defendant. Indeed the county had not the least interest or concern as to who held the patent title. And after making the quitclaim deed to the Boynton Land Company it had no concern for the title which it transferred. The company took its own chance. The county made no attempt to warrant the title, and it had no authority to warrant it. And yet the decision states: "If the attack is successful Emmons county will have to respond to Hackney-Boynton Land Company in a sum considerably in excess of $10,000." That is in keeping with the rest of the case.

In such a case it is sheer folly for a court to quote any or consider decisions bearing on the confidential relation of attorney and client. On every point the decision is manifestly and grossly in error. Hence, it should not stand. The court should order a new trial. The court has ample power to order a new trial and there is no justice in denying it.