GRANT S. YOUMANS, Appellant, v. LOUIS B. HANNA, Thomas Hall, S. C. Severtson, Robert E. Barron, et al., Respondents.

(171 N. W. 835.)

**Appeal and error — recall of remittitur — jurisdiction — res judicata.**

Plaintiff files what is denominated a "motion for rehearing." It is *held* that the matter is controlled and decided by the former decisions of this court in Hilmen v. Nygaard, 31 N. D. 419; Youmans v. Hanna, 35 N. D. 479, and Patterson Land Co. v. Lynn, 36 N. D. 341.

Opinion filed July 27, 1918.

Plaintiff files a motion for rehearing.
Motion denied.
*James Manahan, Arthur LeSeuer,* and *Wm. Lemke,* for motion.

PER CURIAM. By an opinion of this court filed December 2, 1916 (35 N. D. 479, 160 N. W. 705, 161 N. W. 797, Ann. Cas. 1917E, 263), this court affirmed a judgment in favor of the defendants. Plaintiff filed a petition for rehearing on December 22, 1916, and on December 28, 1916, an order was entered denying a rehearing. The remittitur was thereupon transmitted to, and judgment entered thereon in, the district court. On January 2, 1917, the plaintiff filed a mo-

tion to vacate the order denying a rehearing. Such motion was based on the grounds: "That Judges Fisk, Burke, and Goss participated in the deliberations of the court and the decision denying the application [for a rehearing], and were not judges of this court at said time, their term of office having expired upon the first Monday in December of the year 1916, and the said three persons constituting a majority of those assuming to act as the supreme court of this state, and being without legal right or authority to so act, the order denying the said motion was without authority of law and void. 'That the said order amounts in effect to a complete denial of justice in the above- entitled action, no fair hearing upon the merits having ever been allowed in this action in this court.'" 35 N. D. 514. Upon the hearing of that motion Judges Birdzell and Grace regarded themselves to be disqualified, as the questions presented involved their tenure of office. But while the same condition existed with respect to Judge Robinson, he did not deem himself to be disqualified, and signified his intention to sit as a member of this court. District Judges J. M. Hanley, of the eleventh district, and A. T. Cole, of the third district, were thereupon duly called in and requested to sit in the place of Judges Birdzell and Grace. The application to recall the remittitur and reconsider the case was fully argued before the court, as thus constituted. And in the opinion prepared by District Judge Cole this court held that the decision and order participated in by Judges Fisk, Burke, and Goss were, in fact, the decision and order respectively of this court, and consequently valid. And this court further held that when this court has entered a final order in a cause brought to it on appeal, and the remittitur has been transmitted to, and judgment entered therein, the court below, the supreme court loses jurisdiction to recall the remittitur and reinstate the cause, unless the order directing the issuance of the remittitur was based on fraud or mistake of fact. 35 N. D. 481, 160 N. W. 705, 161 N. W. 797, Ann. Cas. 1917E, 263. It may be mentioned that the latter principle was merely reaffirmed, as it had been formerly announced in at least two decisions of this court (see State v. Lund, 25 N. D. 59, 62, 140 N. W. 716; Hileman v. Nygaard, 31 N. D. 419, 154 N. W. 529, Ann. Cas. 1917A, 282). The principle was subsequently reaffirmed by this court in Patterson Land Co. v. Lynn, 36 N. D. 341, 162 N. W. 702. The rule as thus settled has the

support of the overwhelmng weight of judicial authority. See note to Hileman v. Nygaard, Ann. Cas. 1917A, commencing at page 284.

Plaintiff thereafter filed what is denominated a "motion for rehearing." It is somewhat difficult to understand the exact character or purpose of the motion. It does not comply with the rules relating to petitions for rehearing. Neither does the language used indicate an intention to petition for a rehearing of the motion to recall the remittitur. It appears rather to be the intention to make a new motion for a reargument and reconsideration of the cause on the merits thereof. In other words, we are asked to set aside or ignore the original decision, the order denying the rehearing, and the order denying the motion to recall the remittitur. It is not contended in the moving papers, or at all, that the order denying a rehearing was entered, or the remittitur transmitted, through inadvertence or mistake, but on the contrary it is assumed that the order was entered and the remittitur transmitted as the deliberate act of the court as then constituted. Neither is it contended that the decision and order entered on March 15, 1917, denying the application to vacate the order denying a rehearing, was entered through inadvertence or mistake. As disclosed by the former opinions in this litigation, this cause is no longer pending in this court. Manifestly there could be no rehearing on the merits of the cause, until the remittitur had been recalled. This court has already held that it is without jurisdiction to recall the remittitur, and that it has lost jurisdiction over the cause itself. A motion for a reconsideration of the merits of this case is, therefore, manifestly controlled and decided by the decision on the former motion to recall the remittitur, as well as by the former decision of this court in Patterson Land Co. v. Lynn, 36 N. D. 341, 161 N. W. 702. What is said in those decisions is equally applicable here.

It is also clear that the decision of this court on the former motion to recall the remittitur is *res judicata* as to the matters determined in that decision.

We are, therefore, agreed that if the purported motion be considered as a petition for rehearing, it should be denied; and if it be considered as a motion for rehearing of the cause on its merits, it presents no question which this court has jurisdiction to consider, and cannot be entertained, as the cause in which the motion is made is no longer pending. The motion is denied.

GRACE, J. (dissenting). It has been determined by a majority of the members of this court that the question before it, in the above-entitled matter, is whether or not a certain motion for rehearing, addressed to the merits of the case, which motion will be more particularly hereinafter referred to, should be received and considered by this court. In the above-entitled case a motion for a rehearing was filed in this court as appears from the records thereof, on June 8, 1917, *nunc pro tunc* April 2, 1917. Said motion is dated the 28th day of March, 1917, and is signed by James Manahan, Arthur LeSeur, and William Lemke, attorneys for appellant and petitioner. The moving part of, said motion is as follows:

"The appellant respectfully moves and petitions this honorable court to reconsider this case upon its merits, and to grant a rehearing or a new trial because there never was a fair trial below nor a fair hearing in this court."

The remittitur in said case having gone down to the court below, the question presented to this court now is: Should the motion which we are now considering be received into this court, or should the motion be taken into consideration in this court and passed upon and decided by this court in the same manner as any ordinary motion presented to this court? Should the motion be received and decided by this court in the same manner as motions are ordinarily received and decided by this court? The majority of the court is of the opinion that though the motion has been filed in this court on the above-mentioned date, the same should not be received or considered by this court. We think the motion, being filed and entered on the records of this court, is entitled to be received and considered. If the evidence in the case substantiates the claim of the appellant made in their arguments and brief in support of said motion, not only that there was not a fair trial, but that there was no trial, and the argument in the brief of his appellant filed in this motion is to the effect that there was no fair or no trial, then it would seem the motion should be received and considered in order to intelligently decide whether this motion should be received and decided by this court, and whether or not there is any merit to the claim of the appellant that there was no fair or no trial. In order to intelligently determine whether said motion should or should not be received and considered by the court, it is first neces-

sary to determine from all evidence whether there was a trial in the court below. In order to determine this matter, it is necessary to know what the issues were in the trial below, and whether the case was one tried to the court or to the court with a jury. The action was one for damages. Actions at law for damages are triable to a jury. The main issue presented in the case, as we understand the same, was whether or not the plaintiff's bank was solvent or insolvent, and the further question of whether or not the plaintiff was compelled, by duress, to execute a certain contract by which he was compelled to dispose of the bank and its assets. As we read the record, there was evidence submitted on these two questions. It was a question of fact for the jury to decide, under all the testimony, whether the bank was solvent or insolvent, and whether there was any duress exercised upon the plaintiff to compel him to sign the contract above referred to.

It was the peculiar and exclusive province of the jury to pass upon these questions of fact. It is the constitutional right of the plaintiff to have the jury pass upon these facts. If the jury did not pass upon these facts, if they did not return any verdict in the ordinary manner and way, or if the court took the case from the jury so that they could not pass upon these facts and so that they could not perform their duty and exercise the functions preserved to them by the Constitution, which functions are exclusive and apart from any of the powers of the court, then it must necessarily follow that there was no trial in the court below.

In the closing paragraph of its instructions, the court below used the following language as it appears in the transcript in this case: "I have no right under the law to usurp the functions of a jury. I have no right to pass upon any question of fact. I have a right to instruct the jury on questions of law, and it is their duty, under their oaths, to accept the law as given by me, and I state to you, gentlemen of the jury, that, in my opinion, the plaintiff has wholly failed to make a case; that there is no evidence or question of fact to be submitted to you; and I instruct you to sign a verdict in favor of the defendant, and will ask one of the jurors to sign the verdict."

It is plain from such instruction that the jury did not pass upon the questions of fact in this case; that the verdict of the jury signed under direction of the court by one of the jurymen is not a decision by the

jury, nor, in reality, a verdict by the jury, but in such case the decision is by the court, and not by the jury. In other words, the case was taken away from the jury and the jury decided in the manner directed by the court; that is, in favor of the defendant. In such case, it is not the will of the jury that is acting, but they follow the will and direction of the court, and exercise no judgment or discretion as a jury.

If the case was one, therefore, which involved questions of fact triable to a jury, the refusal of the court to permit the jury to determine such questions of fact would defeat plaintiff's constitutional right of trial by jury, and there would be, in reality, no trial.

The two great questions are those we have above stated: Was the plaintiff's bank solvent or insolvent? and, Was there duress exercised upon the plaintiff in the execution of the contract we have referred to? The transcript of the evidence is very long, covering over 900 pages, and a great share of it relates to these particular questions; and, as we view the matter, these were questions exclusively for decision by the jury, with which the court could not interfere.

The question of what constitutes solvency or insolvency, as we view the matter, is a question of law for the court. The court could instruct the jury that a person was deemed to be insolvent when the total amount of his liabilities exceeded the total of his assets; but whether the total of the liabilities did, in fact, exceed the total of the assets, is a question of fact exclusively for the jury. It is for the court to define insolvency and for the jury to determine whether or not insolvency exists. The same is true of duress. The court could define to the jury of what duress consists. The court could define duress as applied to a contract, and could instruct the jury that, if one were compelled to sign a contract against his will and through fear or through fear of threatened imprisonment, such a contract would be executed under duress or without the free and voluntary consent of the person signing the same, and against his will and consent, and would therefore be void; but it would be the exclusive province of the jury to determine as a question of fact whether duress actually existed or was exercised or resorted to in the particular transaction. In other words, the court could define to the jury what constitutes duress as a matter of law, but it is for the jury to determine as a question of fact whether duress in fact existed. Galusha v. Sherman, 105 Wis. 263, 47 L.R.A. 417, 81 N. W. 495; 9 R. C. L. 716.

Whether or not solvency or insolvency existed or duress existed at the time of the making and execution of the contract being questions of fact exclusively for the jury, and a great share of the evidence being with reference to whether the bank was solvent or insolvent, and other evidence relating to whether duress was used or not used with reference to the execution of the contract in question, these questions could not be taken from the jury, it being the exclusive province of the jury to pass upon such questions, and if such questions were taken from the jury by the court and they were not allowed to pass upon them, there was, in reality, no trial.

If there was, in reality, no trial by reason of the plaintiff being denied his constitutional privilege of having the facts of the case determined by the verdict of a jury, there could be no effective judgment entered in the case. It appearing in the record itself that the case was taken from the jury and a verdict directed for the defendants, and it appearing on record that the questions of fact were not submitted to the jury for its determination, the appellate court could do nothing less than remand the case to the trial court in order that the questions of fact in the case might be submitted to a jury, and plaintiff protected in his constitutional right to have the facts of the case decided by a jury of his peers. If, as we have pointed out, the failure to submit the facts in the case to the jury resulted, in effect, in no trial or mistrial, and the judgment entered thereby became of no effect, no subsequent affirmance of the judgment by the appellate court could make the judgment effective, nor could any action of the appellate court, other than the remanding of the case for a new trial before a new jury, protect the plaintiff in his right to a trial of the facts to a jury whose exclusive duty it would be to render a verdict. The trial of the case in the supreme court could be no more effective than the trial of the case below. If the trial of the case below was a mistrial or it was not a trial, the judgment would be ineffective and void, and nothing the supreme court could do, in view of this situation, could make the judgment effective; not even the sending down of the remittitur. The decision of the case in the supreme court and the sending down of the remittitur would not afford the plaintiff his right to have the facts in the case decided by jury. Where a case has been fully and fairly tried upon its merits, and the parties to the action have not been denied any

of the constitutional rights, including the right of trial of the facts of the case to a jury, and there has been no inadvertence or mistake, the remittitur should not be recalled; but the sending down of the remittitur should not operate to defeat a citizen in his constitutional right of trial by jury of any issues of fact which are in the case, or of any other constitutional right which the citizen possesses.

In this case, a jury was impaneled and heard all the evidence relating to the questions of fact, but were not permitted, as a jury in the ordinary and customary manner, to exercise their own judgment and render a verdict according to their own judgment, but they were directed by the court to return a verdict for the defendant, and one of the jurymen was ordered to sign the same. Such a proceeding is not a trial by jury.

The appellate court may have overlooked these important matters, which appear of record in this case, and by inadvertency failed to grant a new trial, as it should have done, and may have inadvertently permitted the remittitur to go down instead of remanding the case to the trial court for a new trial of the facts in the case, and requiring them to be submitted to a jury for a verdict by them, under all the evidence of the case.

The right of trial by jury is provided for in § 7 of article 1, of the Constitution of North Dakota, Said section is as follows: "The right of trial by jury shall be secured to all, and remain inviolate; but a jury in civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law."

A provision to the same effect is contained in the Federal Constitution; and while it is not probably applicable to the suits in state courts, it may be referred to, to show how the Federal courts regard this provision in the Federal Constitution. The 7th Amendment to the Federal Constitution is as follows: "In suits at common law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

The Supreme Court of the United States, in the case of Slocum v. New York L. Ins. Co. 228 U. S. 364, 57 L. ed. 879, 33 Sup. Ct. Rep. 523, Ann. Cas. 1914D, 1029, which was a case in which the circuit

court of appeals directed the judgment for one party when the verdict was for the other, and did this on the theory not that the judgment was required by the state of the pleadings, but that it was warranted by the evidence, had the following to say: "That what was done may be clearly in mind, it is well to repeat that while on the trial in the circuit court the jury returned a general verdict for the plaintiff, this circuit court of appeals, on an examination of the evidence, concluded that it was not sufficient to sustain the verdict, and on that ground directed a judgment for the defendant. In other words, the circuit court of appeals directed a judgment for one party when the verdict was for the other, and did this on the theory not that the judgment was required by the state of the pleadings, but that it was warranted by the evidence."

It will be perceived, therefore, that the court, although practically setting the verdict aside, did not order a new trial, *but it assumed to pass finally upon the issues of fact presented by the pleadings and to direct judgment accordingly.* If this was an infraction of the 7th Amendment, it matters not that it was in conformity with the state statute, or with the practice thereunder in the courts of the state; but neither the statute nor the practice could be followed in opposition to the amendment, which, although not applicable to proceedings in the courts of the several states, is controlling in the Federal court.

In the case of United States v. Wonson, 1 Gall. 5, Fed. Cas. No. 16,750, Mr. Justice Story said: "Now, according to the rules of the common law, the facts once tried by a jury are never re-examined, unless a new trial is granted in the discretion of the court before which the suit is depending, for a good cause shown; or unless the judgment of such court is reversed by a superior tribunal on a writ of error and the *venire facias de novo* is awarded. This is the invariable usage settled by the decisions of ages."

In Parsons v. Bedford, 3 Pet. 433, 7 L. ed. 732, the same learned justice, speaking for the court, said: "The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy."

In the case of Walker v. New Mexico & S. P. R. Co. 165 U. S. 593, 41 L. ed. 837, 17 Sup. Ct. Rep. 421, 1 Am. Neg. Rep. 768, where the

7th Amendment to the Federal Constitution was again under consideration, it was said by the Supreme Court of the United States, speaking through Mr. Justice Brewer, as follows: "Its aim is not to preserve mere matters of form and procedure, but substance of right. This requires that questions of fact in common-law actions shall be settled by a jury, and that the court shall not assume, directly or indirectly, to take from the jury or to itself such prerogative."

The above citations are valuable only in that they show the great care of the highest court of the United States in preserving to the citizens of the United States their right to the jury trial by reason of the provision of the 7th Amendment. There are very many decisions of Supreme Court of the United States largely to the same effect, which show what jealousness and care that high court has manifested in protecting the citizens of the United States in the right of trial by jury.

The majority of the court, in a discussion of the matters under consideration, cite the case of Patterson Land Co. v. Lynn, 36 N. D. 341, 162 N. W. 702. The issues involved in that case are entirely different than those involved in the case at bar. The Patterson Land Co. v. Lynn case was a case in equity, and, as we understand it, an action brought to quiet title to certain lands. In that case the court not only had authority to declare the law, but also full authority and jurisdiction to pass upon facts. In that case the court declared what it considered to be the law, and also found the facts, as it had authority and jurisdiction to do. The judgment was entered by the court, and an appeal was taken to the supreme court, where the case was again tried *de novo*. Clearly in that case the court had authority to declare what it considered the law of the case, and authority and jurisdiction to decide all the facts, and in that case it must be considered that the case was tried upon its merits, the court having jurisdiction to declare the law and determine the facts, and the defendant, in that case, was not entitled to a jury trial.

In the case of Hileman v. Nygaard, 31 N. D. 419, 154 N. W. 529, Ann Cas. 1917A, 282, the action was originally one to foreclose a mortgage. That decision shows that the appeal was taken from the judgment in an action for foreclosure wherein all the issues were fully litigated and tried to the court. No statement of the case was proposed, served, or settled, nor a transcript of the proceedings had in the court

below procured. The case was one properly triable to the court, and the court had authority to determine the law, and jurisdiction to find upon the facts which were submitted to it on the trial. In that case, the issues of law and fact had been determined by the court below, and, the case being one of equity, the court had jurisdiction of both the law and fact. This is not true of the case at bar, which is an action for damages wherein the court had only the authority to declare the law, and the facts of which case the plaintiff had constitutional right to have submitted to the jury. The court below having made this mistake and having assumed jurisdiction of the facts, where plainly under the Constitution it had none, thus denying the plaintiff the constitutional right of trial by jury, no subsequent action of the trial or the appellate court could restore the plaintiff to his constitutional right of having issues of fact determined by jury, other than granting of a new trial.

The mistake and inadvertence of the trial court in taking the case away from the jury and directing a verdict for the defendant were sanctioned by the decision of the appellate court, and the mistake and inadvertence of the trial court in refusing to submit the issues of fact to the jury was not corrected by the appellate court as it should have been, by sending the case back for a new trial, and requiring the issues of fact to be submitted to the jury, as the plaintiff, under the constitution of the state, had a perfect right to have done.

ROBINSON, J. concurs with GRACE, J.