STATE OF NORTH DAKOTA, Respondent, v. ADOLPH HAZER and Rudolph Hazer, Appellants.

(225 N. W. 319.)

Opinion filed February 18, 1929.   Rehearing denied April 6, 1929.

*Knauf & Knauf,* for appellants.

*Russell D. Chase,* State's Attorney and *H. E. Rittgers,* Assistant State's Attorney, for respondent.

NUESSLE, J. The defendants, Adolph Hazer and Rudolph Hazer, were jointly charged with and convicted of the crime of grand larceny. Thereafter they moved for a new trial, which motion was denied. From the judgment of conviction and from the order denying the motion for a new trial, the defendants now appeal to this court.

As grounds for reversal, the appellants urge: the insufficiency of the evidence to sustain the verdict; errors of the trial court in rulings on questions of evidence; other errors of law occurring during the trial; error in giving and in failing to give proper and sufficient instructions to the jury; and error in denying their motion for a new trial, predicated on these various assignments, and on a showing of newly discovered evidence. In all the appellants specify seventy-two alleged errors as sustaining their appeal.

The larceny charged was that of a red cow and her calf, the property of the complaining witness McClung, a farmer who lived near Cleveland in Stutsman county. The defendants who are brothers are also farmers. Adolph Hazer in addition to farming carried on a livestock business in a small way, buying, feeding and shipping cattle and hogs. Rudolph Hazer lived on a farm a short distance from McClung's. Adolph lived on his own farm some ten or fifteen miles north of Rudolph's. About the middle of October, 1927, McClung's cow and calf strayed away and though he searched diligently he never found them. On October 18th he went to Rudolph Hazer's place and made inquiry of him concerning them. Rudolph denied any knowledge as to the whereabouts of the cattle, though he said he had seen some fitting their description about his place a few days before. Toward the latter part of November McClung received information leading him to believe that Adolph Hazer might know something about the cattle so he went to see Adolph. It seems that on October 16th Adolph visited Rudolph. He had a truck which he used for transporting livestock as he bought it about the countryside. He returned home after dark that evening and carried two cows and a calf in this truck. He met with an accident on the road, the truck tipping over, and had to go to a wayside farmer for help. This farmer's boys went to help him out

of his difficulty and in doing so observed the cows and the calf. He had to leave the animals in a pasture that night and came and got them the next morning. The boys were called as witnesses by the state and according to their testimony one of the cows and the calf fitted the description of McClung's lost cattle. Report of this incident reached McClung and he went to see Adolph. Adolph said that he had met with the accident and that he was bringing up some cattle he had bought from Rudolph. He said the cow and the calf were spotted animals and quite different in description from those lost by McClung. McClung, however, examined Adolph's cattle but his were not among them. However, he at once went to see Rudolph before the brothers had an opportunity to talk together. McClung enquired of Rudolph as to whether he had sold two cows and a calf to Adolph and Rudolph denied having done so. McClung then said Adolph says "he got two cows and a calf from you." Rudolph was greatly embarrassed and said he could not believe his brother would say such things and wanted to see his brother. A little later McClung went back to Adolph's and then found a red calf which he was certain was the one he had lost. There was testimony from numerous other witnesses as to the description of the animals in question, as to conversations with the defendants and as to various other incidents, all tending in some respects to sustain the state's theory of the case, which was that Rudolph had feloniously taken the cattle and Adolph had aided and abetted him by carrying them away and later disposing of them. At the trial the defendants sought to explain away any suspicious circumstances and stoutly maintained that the cattle which Adolph had at the time of the accident were cattle which had belonged to Rudolph and which he had bought, and that they did not fit the description of McClung's cattle; that though Rudolph had denied having sold them to Adolph, he did so for the reason that one of the cows was mortgaged and he feared he might get into trouble because of selling mortgaged property. Many witnesses were examined in support of the defendants' case. The jury, however, returned a verdict of guilty as charged in the information.

We have examined the record carefully. The evidence is largely circumstantial. We are of the opinion, however, that it is sufficient to sustain the verdict as returned. Further comment is unnecessary. See State v. Thompson, 56 N. D. 716, 219 N. W. 218.

The cattle in question disappeared from McClung's shortly before October 16th. The defendants were arrested the latter part of November. They had a preliminary examination immediately and were informed against and tried at the December term of the district court of Stutsman county which convened on the first Monday in December. The winter of 1927–28 set in early. The defendants lived in a section of Stutsman county which is rather hilly, and remote from the county seat. The weather, beginning the latter part of November and during the month of December when the trial was had, was very cold and there was a very heavy fall of snow. It was very difficult to travel by automobile and it was impossible to get about by other means to investigate the matter carefully owing to the distance required to be traveled. The defendants claim that on account of these circumstances they were unable to look up evidence and interview witnesses and to adequately prepare their case and that as a consequence and without fault on their part when the case came to trial they could not properly defend it; that as soon as possible thereafter they made further investigation and discovered many facts and circumstances which would tend to cast a more favorable light on their case and found numerous witnesses whose testimony would have been of great value to them. The boys who helped Adolph the night of the accident, and who testified at the trial as state's witnesses, later went to Adolph's place and examined certain cattle in his possession and which unquestionably were not those lost by McClung and now say that these were the cattle which were in the truck at the time of the accident. Other witnesses were interviewed who said that the latter part of October they saw a man somewhat resembling one of the state's important witnesses driving a cow and a calf having the description of McClung's cattle to a stock buyer to whom he sold them, and the stock buyer and others verify these statements. Still other witnesses were interviewed who made statements tending to impeach various of the state's witnesses who testified at the trial. The defendants insist that all of this evidence is newly discovered; that it was not produced at the trial through no fault of theirs and that it tends to establish that someone other than the defendants sold and disposed of McClung's cattle. The defendants in support of their motion for a new trial produced affidavits of these several persons setting forth these facts and that such persons would testify accordingly on a new

trial of the case. However, on motion for a new trial this showing was made to the judge who presided at the trial wherein the defendants were convicted. He considered it in the light of his knowledge of the case gained by hearing and seeing the witnesses who testified therein as is evidenced by his memorandum made when he denied the motion, as follows:

"I have reviewed the voluminous record in this case and have carefully considered the assignments of error and exceptions, as well as the affidavits and motion for a new trial.

"So far as the legal questions are concerned, if there was error in the rulings or instructions, I do not think any of them were prejudicial to the defendants' rights.

"Regarding the motion for a new trial on the grounds of newly discovered evidence, I have carefully gone over the affidavits of both sides; also the testimony such affidavits attempt to impeach or corroborate.

"It, of course, happens in every criminal case of public interest that certain witnesses, even if present in the court room, do not volunteer to tell what they know until the case is over. In other words, there are always some who do not like to be involved. It so happened in this case and does so happen in practically every case of this kind.

"The strongest evidence offered in support of the motion for a new trial is that regarding the stranger driving a cow and calf to Buchanan on October 27th, answering in a way the description of the cow and calf owned and alleged to have been stolen from McClung. The affidavits leave no doubt but that a red cow and calf were sold to B. B. Russell by a stranger that day on the road to Buchanan, but there are thousands of red cows and red calves in the country, and even if this were the same cow, it would not be inconsistent with the guilt of the defendants.

"The evidence shows that the calf of McClung's was separated from the cow, and was at the Hazer farm in Stutsman county the day before Thanksgiving.

"A calf, like other livestock, can be very accurately identified by the owner, especially if he raised it. On the other hand it is almost impossible for anyone else to identify stock or poultry unless there are outstanding characteristics, which was not true in the case of this calf.

"In my opinion the defendants in this case have had a fair trial.

Their legal rights were fully protected by an attorney as able as any in North Dakota. No lawyer could honorably have done more for one charged with a crime than Judge Knauf did for the defendants in this case. All the defendants' rights were properly and very ably protected, and of course it is not the lawyer's fault that the evidence strongly pointed to the guilt of the defendants, and the jury returned a verdict of guilty.

.    .    .    .    .    .    .    .    .    .    .

"Considering the whole matter, after carefully going over the material parts, I feel that a fair trial was had and that a new trial should not be granted."

The question as to whether a new trial should be granted or denied was one which lay largely within the discretion of the trial judge. This discretion should always be exercised in the interests of justice. The presumption is that it was properly exercised. The trial court's judgment in this respect is conclusive on this court unless this court can say that in denying the motion such discretion was abused. See State v. Kerns, 50 N. D. 927, 198 N. W. 698; Strong v. Nelson, 43 N. D. 326, 174 N. W. 869; State v. Cray, 31 N. D. 67, 153 N. W. 425; Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419. We have carefully considered the showing as made by the defendants on their motion for a new trial and we are not prepared to say that there was an abuse of discretion on the part of the trial court in denying the same.

The instructions were given in writing. These instructions, however, were not submitted to counsel for the defendants in such time as to enable counsel to take exception to them prior to the time when they were delivered to the jury. The defendants now complain that such instructions were defective and prejudicially erroneous, in that the court wholly failed to charge with respect to the presumption of innocence and that in view of this omission the court's charge as to the matter of reasonable doubt was also erroneous; that on these two accounts the defendants were so prejudiced that a new trial should be granted. We have examined the instructions. We find that the trial court did omit (we think inadvertently) to instruct as to the presumption of innocence. However, there was no request made for such an instruction on the part of the defendants. The defendants had an opportunity to request such an instruction prior to the time when the

jury were charged. The instructions which are here complained of are identical, both with respect to the omission to charge as to the presumption of innocence and with respect to the charge as given on the matter of reasonable doubt, with those in the case of State v. Bowe, lately considered by this court. See State v. Bowe, ante, 89, 220 N. W. 843. The same contentions were there raised as are now raised here. In that case we held that under the circumstances and in view of the defendant's failure to request an instruction as to the presumption of innocence, there was no prejudicial error. We have again considered the matter carefully but can discover no good reason why we should recede from the view there taken and expressed.

The defendants challenge many rulings of the court on questions of evidence, either where the court admitted testimony over their objection or sustained the state's objections to testimony offered by them. It would serve no good purpose to set forth these several rulings here. The objections were on the grounds that the questions were leading; that the evidence objected to was irrelevant and immaterial; that there was no foundation laid for the impeaching questions; that the examination was not proper cross-examination; and that the questions called for hearsay testimony. We have examined the record meticulously in the light of the arguments advanced by the defendants against the rulings. Some of the challenges are obviously without merit. Some few of the rulings made were erroneous, but almost without question where this was the case the court later admitted the testimony which had been shut out or where evidence was erroneously received ordered that it be stricken out. Counsel for the defendants urge that even though this was done, nevertheless the defendant thereby suffered prejudice since the effect of adverse rulings was to prejudice the jury against them, and that such prejudice was not obviated by later corrections. In the hurry of trial work it is easy for a trial court to err on questions of evidence, and if having done so he later discovers his error and permits the testimony to be received or orders it stricken out, as the case may be, we think that ordinarily the error is thereby cured. This was so in the instant case. The trial court must have some latitude with respect to such matters. The conduct of the trial, the propriety of the examination of witnesses and the order in which the evidence is offered, are matters which must be left largely to the sound

discretion of the trial court. See State v. Kerns, supra; Holbert v. Weber, 36 N. D. 106, 161 N. W. 560; State v. Tracy, 34 N. D. 498, 158 N. W. 1069; Blackorby v. Ginther, 34 N. D. 248, 158 N. W. 354; Zilke v. Johnson, 22 N. D. 75, 132 N. W. 640, Ann. Cas. 1913E, 1005; State v. Goetz, 21 N. D. 569, 131 N. W. 514. We are of the opinion that there was no prejudicial error on account of any of the rulings complained of in the instant case.

The judgment and order from which the appeal was taken must be and they are affirmed.

BURKE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.