STATE of North Dakota, Plaintiff and Respondent,

v.

Joseph E. JAGER and James Forrest Stewart, Defendants and Appellants.

Cr. No. 284.

Supreme Court of North Dakota.

July 23, 1958.

Rehearing Denied Aug. 16, 1958.

Duffy & Haugland, Devils Lake, for appellants.

Ralph J. Erickstad, Sp. Asst. State's Atty., Devils Lake, and Philip R. Bangs, Sp. Asst. State's Atty., Grand Forks, for respondent.

GRIMSON, Chief Justice.

This matter comes before the court on a motion for a new trial on the grounds of newly discovered evidence. The defendants were originally tried on a charge of grand larceny. On Feb. 26, 1954, both defendants were found guilty. A motion for a new trial was immediately made and heard on March 20, 1954, denied on April 26, 1954. No appeal was taken. A second motion for a new trial was made on Dec. 26, 1955, on the grounds of newly discovered evidence. This motion was denied on Feb. 26, 1956. Appeals both from the judgment of conviction and from the denial of this last motion for a new trial were taken and were decided by this court on July 26, 1957, and both appeals denied. N.D., 85 N.W.2d 240. A petition for a rehearing was denied on Oct. 14, 1957.

A petition to withhold the remittitur and a petition to amend statement of the case were filed on November 15, 1957. On that day a minute order was entered withholding the remittitur until Dec. 16, 1957. On Dec. 14, 1957, a motion to amend the statement of the case was denied. No action, however, was taken to send down the remittitur.

■ This motion for a new trial was made in District Court, Jan. 15, 1958, on the ground of new evidence discovered on Dec. 24, 1957. A motion for a new trial is an independent remedy in both criminal and civil procedure. State v. Prince, N.D., 66 N.W.2d 796. That motion was heard on January 20, 1958. A further application was made by the defendant on January 18, 1958, to withhold the remittitur. That application was denied on January 30, 1958 and the clerk was directed to transmit the remittitur forthwith which was done on January 31, 1958. The Dis-

trict Court denied the motion for a new trial on February 25, 1958.

This appeal is from the order denying that motion. The first question raised is whether the district court had jurisdiction to act upon the motion for a new trial.

It is contended on behalf of the defendants that Section 29–2406, NDRC 1943, which provided that motions for a new trial in criminal cases, excepting in case of a sentence of death, must be made before the time for appeal has elapsed, was repealed by Chapter 207, S.L.1951 and no substitute provided. Defendants claim therefore that there is no limitation of time for making a motion for a new trial in a criminal case except a limitation in Section 29–2404, NDRC 1943, which provides that it must be brought within 30 days after the discovery of facts upon which the party relies in support of his application, which was done in this case, and that, therefore, the district court had jurisdiction to act on this motion.

On behalf of the state, however, it is claimed that since the supreme court's original decision was made on July 26, 1957, and two motions for a new trial had been denied and the defendants had been granted an extension of time only to Dec. 16, 1957, that final determination of the case had been made. That, therefore, the district court did not have jurisdiction to act upon this last motion for a new trial.

In State v. Prince, N.D., 66 N.W. 2d 796, 799, this court said: "A civil action is deemed pending from the time of its commencement until its final determination upon appeal or until the time of appeal is passed. Section 28–0510, NDRC 1943. By analogy it would seem that a criminal action is also pending until its final determination upon appeal or until the time for appeal has passed" and we held that "An action, either civil or criminal, is deemed pending until the final determination of an appeal or until the time for an appeal has passed."

The question then is when the determination of the appellate court upon appeal is final.

In State v. Cook, 53 N.D. 756, 208 N.W. 556, this court held: "[The Supreme Court] does not lose jurisdiction of a cause so as to be without power to grant a rehearing therein, until after the remittitur has gone down."

In State v. Sund, 25 N.D. 59, 140 N.W. 716, this court held that "When a remittitur has gone down from this court and has been filed in the trial court, under all ordinary circumstances this court has lost jurisdiction of the case. * * *"

In Patterson Land Co. v. Lynn, 36 N.D. 341, 162 N.W. 702, we held: "When the Supreme Court becomes invested with jurisdiction of a cause brought there on appeal, it retains such jurisdiction until the cause has been disposed of and the remittitur sent down to the court below; * * *".

It is clear since Chapter 207, S.L. 1951, there is no limitation by statute except Section 29–2404, NDRC 1943, on the time when a motion in a criminal case can be made for a new trial on newly discovered evidence. Under State v. Prince, supra, a criminal action is pending until its final determination upon appeal. Under the above authorities our jurisdiction does not cease until the remittitur has gone down.

In this case the jurisdiction of the case remained in the Supreme Court because the remittitur had not been sent down when the last motion for a new trial was made. The time when it was made rather than the time when it was decided controls. Skaar v. Eppeland, 35 N.D. 116, 159 N.W. 707. The motion was made on Jan. 15, 1958, while we still held the remittitur.

We have, therefore, come to the conclusion that the District Court had jurisdiction to pass upon the motion for a new

trial and that we can consider the appeal on the merits.

The next question is whether the facts alleged in the application are of sufficient merit to warrant a new trial.

The showing upon which this motion is based is the affidavit of one, Robert W. Wheeler, stating that he and another man called, "Sonny," committed the crime of which defendants were convicted. This affidavit was made in Los Angeles where the father of the defendant Stewart was spending the Christmas Holidays. The father notified the defendants' attorneys thereof. The affidavit of Mr. Wheeler was verified before a California Notary Public on Dec. 20, 1957, and afterwards amplified by an oral examination by a California lawyer, taken down stenotypically and transcribed.

The substance of Robert Wheeler's affidavit and statement is that about the middle of May 1953 he want to the Stewart Detective Agency in Los Angeles to ask defendant, Stewart, for a job. Mrs. Stewart told him that Stewart was in Grand Forks, North Dakota, working on a case, together with Joe Jager, her brother. He claims he borrowed a car from a friend from Wyoming by the name of Skinner, got some clothes, a supply of liquor and some maps and started for North Dakota. There is no description of the highways he took. He drank his whiskey, slept in his car and reached Grand Forks in 3½ days. Mrs. Stewart had told him to inquire at the Great Northern depot because Stewart's telegrams were sent there. Stewart was said to be in Minot. That afternoon he drove to Minot to look for Stewart. He slept in his car on the outskirts of town, finished his whiskey and started early the next morning looking at every new Ford, the kind Stewart was supposed to be driving. Then when he got hungry he started for a cafe but wound up in a bar. There he got to drinking and talking with a friendly fellow who gave his name as "Sonny." They visited for a couple of hours. Sonny told him he knew Joe Jager from Devils Lake, Wheeler told him he didn't have enough money to get back to LA unless he could find Stewart and borrow some money from him. Sonny said he was almost broke too. They again drove around town but found neither Stewart nor Jager. They bought some more whiskey jointly and talked about their lack of finances. Sonny told him he knew where there was a small safe in a house in Devils Lake that would be real easy to get, if one man stood outside watching while the other went in to get the safe. Both were drunk. Sonny said "he'd have to call the people who owned the safe to make out like one of their relatives was sick." They pulled off the road at a farm house to use the phone. Sonny asked for a pencil and paper and Wheeler gave him a pencil and a map out of the car. Sonny put on dark glasses for fear he would be recognized. He returned saying he had not phoned. They drove a little while and went to a gas station. While the woman filled the car Sonny went in and used the telephone. He returned saying everything was all set. They drove into a small residential area in Devils Lake where they changed cars because Wheeler's car had Wyoming plates. He does not say whose car they borrowed. They drove up to the house containing the safe. He knocked on the back door and a little boy came out. They left but returned with Sonny going to the front door of the house to engage the boy in conversation while Wheeler went into the back door, found the safe and carried it out. They went out on the highway and drove onto a side road. Sonny opened the safe with a sledge hammer and crow bar from the car but found no money so they returned to Wheeler's car and Sonny told Wheeler he had better leave town. "I would be spotted easy." Wheeler took off for LA, got as far as "San Bardo", ran out of gas and hitchhiked back to LA and got some money. He returned the next day to get his car. A month later Wheeler says he went to Stewart's office and found that he and Joe "had been arrested for the crime that me and Sonny

committed," but there is nothing to show that it had bothered him since that time.

In considering the weight to be given to this new evidence the court may consider the time and circumstances under which this affidavit was given. Four and a half years had passed since the conviction of the defendants. During that time by their different motions for a new trial and for some time, had delayed the commitment of the defendants in accordance with the sentence. Now Robert Wheeler, when he and the defendant's father were together in Los Angeles, makes an affidavit to the effect he committed the crime. While a man may admit the commission of a crime on account of his own feeling of guilt and desire to right a wrong resulting from his own action, there is no showing that Wheeler was in such a mental state, and if so, why he had waited four and a half years prior to making it. So long a time having elapsed and he being absent from the state he might now have thought he was running not much risk of punishment for himself. He claims that there was no money in the safe. The old safe might not have been worth a sufficient amount to make its taking grand larceny. He placed the date about the middle of May 1953. Actually, the crime was committed May 25, 1953. When that affidavit is carefully checked no way can be found to corroborate it. It would be impossible to identify and locate "Sonny." Wheeler identified no highway upon which he traveled nor any place where he ate. He always slept in his car so his location at any time could not be established. He must have been familiar with the transcript of the case. He tried to connect his story with that. For instance he said he gave a pencil and a road map to "Sonny" when they stopped at the farm to telephone. In the trial of the case the evidence showed that Stewart had inquired of a woman near Knox for the names of the relatives of the proposed victim and that he had a road map on which he wrote some names. The lady identified Stewart as the man who wrote the names on a map. That map was found by the sheriff of the county in Stewart's car when they were arrested for this crime and Stewart admitted his writing thereon. That did not prove to be a very successful attempt at linking Wheeler's story with what actually happened.

This affidavit of Mr. Wheeler is the only showing on the motion for a new trial of the evidence on which the motion was based. While on such a motion the evidence may be presented by an affidavit, Sec. 29–2403, NDRC 1943, there must also be included the names of the witnesses who will testify to that evidence on the trial, 39 Am.Jur., New Trial, Sec. 162, p. 169. The only names presented in the affidavit and motion for a new trial were those of Wheeler, "Sonny" and Skinner.

Judge Lundberg had suggested to Mr. Duffy that he should bring Wheeler back to North Dakota to be examined before the court so he could determine the credibility of his affidavit. Mr. Duffy tried to do that but finally was informed that Wheeler was in jail in Mexico. Apparently he could not have been brought back to testify had a new trial been granted.

Even with the probability of Wheeler's absence at the time of the trial there is no showing how this evidence could have been presented to a jury. "Sonny" is unknown and impossible to identify and locate. Skinner, the man allegedly from Wyoming, whose car Wheeler claimed to have borrowed in Los Angeles, would be difficult to identify and locate and could anyhow only testify to whether Wheeler used his car without being able to tell where Wheeler went. There is no showing made as to how the case could be proven in Wheeler's absence. These are matters the court could consider in passing on the motion.

When a verdict has been rendered against a defendant the court may grant him "a new trial * * * When new evidence is discovered which is material to

the defense and which the defendant could not, with reasonable diligence, have discovered and produced at the trial." Chapter 216, § 1, Subsection 7, S.L.1949. "In any event, whether or not a new trial shall be granted on the ground of newly discovered evidence is a matter which rests largely in the discretion of the trial court, and his action in respect thereto will not be disturbed, except in case of abuse. The question is whether or not, if the newly discovered evidence had been produced, a different verdict would probably have resulted." State v. Murbach, 55 N.D. 846, 853, 215 N.W. 552, 555; See also Aylmer v. Adams, 30 N.D. 514, 153 N.W. 419; State v. Cray, 31 N.D. 67, 153 N.W. 425; State v. Kerns, 50 N.D. 927, 198 N.W. 698; State v. Stepp, 48 N.D. 566, 185 N.W. 812; State v. Hazer, 57 N.D. 900, 225 N.W. 319; State v. Thompson, 68 N.D. 98, 277 N.W. 1; State v. Jager, N.D., 85 N.W.2d 240, 241. "However, the court on the motion is not bound to accept as true a confession by a third party in one of the moving affidavits. If it seems probable that the proof of the commission of the crime by another would not be sufficient on a new trial to exonerate accused, the motion may be denied." 23 C.J.S. Criminal Law § 1454, pp. 1230, 1231.

Judge Lundberg in his memorandum opinion comments on the evidence as follows:

"It is so vague that it cannot be checked as to accuracy in any of its vital parts—there is no way of corroborating whether Wheeler ever was in North Dakota. His companion in crime, 'Sonny' is even a more nebulous figure. Wheeler's disappearance into Mexico, at the time when something more substantial could probably have been gotten out of him, adds to the improbability of his story."

The district court finally says, "We also have a story that is highly improbable without any reasonable prospect that the improbabilities could be or will be removed.

* * * Accordingly the Motion for a New Trial on the ground of newly discovered evidence, made by the defendants, is hereby in all things denied."

In the original opinion of this court after a thorough study in this case, State v. Jager, N.D., 85 N.W.2d 240, 245, this court said: "In our opinion the evidence of the state overwhelmingly supports the conviction of the defendants." This affidavit of Wheeler does not overcome our conviction in that regard. That also was the opinion of the district court. He gave the matter careful consideration. He prepared and filed a memorandum decision from which it appears that he exercised the judgment which the law requires upon making a decision on a motion for a new trial on the grounds of newly discovered evidence and he denied the motion. The evidence shows that in so doing he did not abuse his discretion.

The decision of the District Court is affirmed.

MORRIS, JOHNSON, and SATHRE, JJ., concur.

BURKE, Judge (concurring specially).

I agree that the order of the trial court denying a new trial in this case should be affirmed. There are, however, some things said in the opinion in this case and in the opinion in State v. Prince, N.D., 66 N.W.2d 796, which give me some concern. While in neither of these cases do we hold explicitly that a motion for a new trial of any action must be made during the time the action is pending, such a result would seem to follow a fair interpretation of the language used.

Prior to the enactment of Chapter 207, Laws of N.D. 1951, a motion for a new trial was required to be made before the time for appeal from the judgment had elapsed, except in capital cases wherein the motion might be made at any time before execution. Chapter 207, supra, re-

pealed this section, with the result that there is no longer any statutory limitation upon the time within which a motion for new trial must be made.

I think it a fair conclusion that, by its repeal, the legislature intended to remove the fixed limitation of time that had previously existed and likewise did not intend that we, by judicial interpretation, should substitute another fixed limitation upon such time.

It seems to me that the proper rule to adopt, where no limitation by rule or statute exists, is that a motion for a new trial should be made within a reasonable time, depending upon the grounds urged and all of the circumstances of the case. This appears to be the rule most widely approved. 66 C.J.S. New Trial § 124, p. 341.